## DEAL ET AL. *v.* UNITED STATES.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
NINTH CIRCUIT.

No. 344. Submitted April 25, 1927.—Decided May 16, 1927.

1. A postmaster is not liable as an insurer under Rev. Stats. § 3846
for the loss of a registered package containing money which belongs
to the United States but which is not such that it may be " ordered
by the Postmaster General to be transferred or paid out." P. 279.
2. Under Postal Regulations of 1913, §§ 291 and 940, a postmaster
and his surety are responsible for registered mail " lost or rifled,"
when the postoffice " has been robbed," only if the " depredation
or loss be due to negligence or disregard of the Regulations." P.
280.
3. Charges for witness travel outside the district are not taxable
against a defeated party to a civil action in the District Court for
Alaska. P. 284.

11 F. (2d) 3, reversed.

CERTIORARI (271 U. S. 656) to a judgment of the Circuit
Court of Appeals which affirmed a judgment of the Dis-
trict Court for the Territory of Alaska in favor of the
United States in a suit against a postmaster and his surety
for money abstracted from a registered package.

*Mr. Louis S. Beedy* for petitioners.

*Solicitor General Mitchell, Assistant Attorney General
Letts, Mr. Gardner P. Lloyd,* Special Assistant to the At-
torney General, and *Mr. J. Kennedy White,* Attorney in
the Department of Justice, for the United States.

MR. JUSTICE MCREYNOLDS delivered the opinion of the
Court.

Upon his appointment as postmaster at Fairbanks,
Alaska, petitioner Deal executed the ordinary official
bond, with the Fidelity & Guaranty Company as surety,
conditioned that he " shall faithfully discharge all duties

and trusts imposed on him as postmaster either by law or by the regulations of the Post Office Department," etc. The United States sued on this bond in a District Court of Alaska and asked judgment for ninety-nine hundred dollars, the amount of currency abstracted from a package deposited in the Fairbanks office for registration and transmission. Judgment upon a verdict went for them and was affirmed by the Circuit Court of Appeals, Ninth Circuit, notwithstanding errors by the trial court, recognized but held to be harmless. 11 Fed. (2d) 3.

Replying to the petition for certiorari from this Court, the Solicitor General very properly said, " The record is in a jumble, and the treatment of the case by the trial court involved so many inconsistencies that the case is difficult to analyse."

The trial judge charged the jury upon three inconsistent theories. (1) That the postmaster was liable for the abstracted money only if guilty of some negligence which caused the loss. (2) That liability existed if he had violated some regulation of the Post Office Department respecting care of the registered package although not shown to be proximate cause of the loss. (3) That the money taken, being property of the United States, was public funds and the postmaster became liable therefor as an insurer as though it had been received from sale of stamps or money orders.

Among other things, the record discloses—

That on September 15, 1921, the First National Bank deposited at the Fairbanks Post Office for registration and transmission a package addressed to the disbursing agent at Healy, Alaska, via Nenana, which contained ninety-nine hundred dollars in currency, and some silver, belonging to the United States. The clerk who received and registered it thought the package contained money, but was not so advised. Another clerk placed it in an iron safe and left the door on the day combination.

That during the night of September 15, petitioner Deal permitted an unauthorized person to enter the office. September 16 the package was placed in the pouch destined to Nenana. Upon its arrival at that place the currency, was gone—a magazine filled the space.

That some evidence touching treatment of the package at the Fairbanks office and much testimony concerning transportation, tended to show the bills were abstracted while it remained there.

Considering the serious nature of the errors committed by the trial court, and upon the entire record, we must conclude that they caused material prejudice to the petitioners' substantial rights. Act February 26, 1919, c. 48, 40 Stat. 1181. Accordingly, the challenged judgment must be reversed and the cause remanded for another trial. Under this conclusion, we need only consider matters probably important for further conduct of the cause.

The Circuit Court of Appeals properly rejected, and the Solicitor General does not rely upon, the theory that under § 3846 R. S. (§ 360, Postal Regulations 1913) the postmaster became liable for the registered package as an insurer. That section provides: " Postmasters shall keep safely, without loaning, using, depositing in an unauthorized bank, or exchanging for other funds, all the public money collected by them, or which may come into their possession, until it is ordered by the Postmaster-General to be transferred or paid out." Public money, within this provision, " obviously is money belonging to the United States in such sense that it may be ordered by the Postmaster General to be transferred or paid out." *Smyer* v. *United States,* 273 U. S. 333.

It is admitted that petitioner Deal failed to observe certain regulations intended to secure safety of registered matter; but it is stoutly denied that the evidence showed any causal connection between such negligence or disregard of duty and the loss sustained.

During 1921 the 1913 Edition, Postal Laws and Regulations, was in force. Sections which require special consideration follow:

"Sec. 291. When a post office has been robbed, the postmaster shall immediately report all the facts to the Chief Inspector and to the post-office inspector in charge of the division in which the post office is located. (See sec. 35.) The report should give, if possible, all the circumstances connected with the robbery, the date, a detailed inventory of the loss, the denominations of stamped paper stolen, the amount of postal and money-order funds and of each class of Government property. The postmaster shall be held responsible for the loss if he fails to exercise due care in the protection of the property. If the loss includes the mail key the number should be given. (See sec. 1527.) Full particulars regarding registered mail lost or rifled should be reported. The Chief Inspector shall promptly notify the Assistant Attorney General of every such casualty from which a claim for credit under the provisions of section 150 may arise. . . .

"Sec. 940. Postmasters and other postal employees will be held personally responsible by the Post Office Department for the wrong delivery, depredation upon, or loss of any registered letter or parcel if such wrong delivery, depredation, or loss be due to negligence or disregard of the regulations. [The provisions of this section appear unchanged as § 989, Edition 1924 of the Regulations.]

"Sec. 150 [Act May 9, 1888, c. 231, 25 Stat. 135, as amended by Act June 11, 1896, c. 424, 29 Stat. 458]. That the Postmaster General be, and he is hereby, authorized to investigate all claims of postmasters for the loss of money-order funds, postal funds, postage stamps, stamped envelopes, newspaper wrappers, and postal cards, belonging to the United States in the hands of such postmasters, resulting from burglary, fire, or other un-

avoidable casualty, and if he shall determine that such loss resulted from no fault or negligence on the part of such postmasters, to pay to such postmasters, or credit them with the amount so ascertained to have been lost or destroyed, etc., etc."

Did § 291 impose liability for theft from the registered package while held by the postmaster and not protected as the Regulations required, without evidence to show that the loss resulted from failure to observe them? If so, it was unnecessary to show such causal connection, as the United States maintain. But if § 940 defined the responsibility, as he insists, that relation was essential.

Section 492, Edition 1879, Postal Laws and Regulations; § 700, ed. 1887; § 669, ed. 1893; § 278, ed. 1902; § 328, ed. 1924, correspond to § 291, ed. 1913.

Edition 1879. " Sec. 492. *Postmasters to immediately report robbery of post office.* Whenever a post office has been robbed the postmaster will immediately report all the facts . . . This report must state as fully as possible all the circumstances connected with the robbery, giving the date and extent of the loss. He must be careful to state whether the loss consists of stamps, stamped envelopes, postal cards, letters (stolen or rifled), postal or money-order funds, or government property. . . . He must give all the information in his possession relating to each lost or rifled registered letter . . . For the value of registered or ordinary mail lost by robbery of post offices postmasters will be held responsible if, upon investigation, it appears that due care was not taken to secure the mail matter from depredation."

Edition 1887. " Sec. 700. *Reports of robberies of post offices.* . . . As to registered matter lost or rifled, the report should specify the post office where mailed, date of mailing, number of letter and registered package envelope, by whom written, to whom addressed, and con-

tents, if known. For the value of registered or ordinary mail matter lost by robbery of post offices, the postmaster may be held responsible to the losers, if upon investigation it appears that due care was not taken for the protection of the property. . . ."

Section 669, Edition 1893, does not differ materially from § 700, Edition 1887; and this is true of § 278, Edition 1902, except the latter declares " the postmaster *will be held* responsible," while the two previous editions say " *may be held.*"

Edition 1924. " Sec. 328. When a post office has been broken into by burglars, the postmaster shall [make report, etc.] . . . Full particulars also regarding registered mail lost or rifled should be given. . . . The postmaster shall be held responsible for the loss if he fails to exercise due care in the protection of the property."

Section 864, Edition 1902, (to which § 940, Edition 1913, corresponds) provides—" Postmasters will be held personally responsible by the Post Office Department for the wrong delivery, depredation upon, or loss of any registered letter or parcel while in their custody, if such wrong delivery, depredation, or loss be due to negligence or disregard of the regulations. They are also liable on their bond for any damage resulting to the Department on account of such wrong delivery, depredation, or loss."

For many years the Regulations imposed possible or positive liability upon postmasters for loss of registered mail when the office had been robbed and lack of care appeared; also the general provisions of § 940. And the argument is that we cannot deduce from the altered language of § 291, Edition 1913, intention to relieve from the strict liability theretofore imposed. But why the change if it meant nothing? And may petitioners be subjected to liability because of language found in ancient Regulations of which, probably, they had no knowledge?

On the other hand is the suggestion that to hold post-masters responsible under § 291 for the loss of currency from registered packages would produce an anomalous situation, since this would leave the Postmaster General with full power, under § 150, to relieve where money order funds are lost but with no such power where money belonging to the United States is taken from a registered package the contents of which had not been revealed.

Difficulties, of course, arise from the words " robbery " in § 291 and " depredation upon " in §. 940. ` Robbery, accurately defined, is " the felonious and forcible taking from the person of another, goods or money to any value, by violence or putting him in fear." *Bouvier's Law Dictionary; Jolly* v. *United States,* 170 U. S. 402, 404. Depredation is " the act of plundering; a robbing; a pillaging." *Century Dictionary.* Apparently the Regulations contained no definition of these terms. Generally, at least, the word " robbery " conveys the idea of violence and it is hardly appropriate to stealthy abstraction. One may well doubt the application of § 291 in the circumstances here disclosed. The author of § 328, of the Regulations, Edition 1924, probably noted that larceny, burglary and robbery are distinct offenses.

 - The structure and language of § 291 are not wholly inconsistent with the theory that postmasters " shall be held responsible for the loss " of property described by the lines immediately preceding the quoted words; but for " registered mail lost or rifled " " when a post office has been robbed " they become responsible only if the " depredation or loss be due to negligence or disregard of the Regulations."

Certainly the Regulations of 1913 are far from clear. Considering the language and the arrangement of § 291 along with the general provisions of § 940, and not forgetting that both were prepared by the Post Office Department, are subject to alteration, impose large respon-

sibility, and should be construed according to the prob-
able understanding of men who accept such offices, we
conclude that § 940 prescribed the petitioners' responsi-
bility, and the jury should have been charged accordingly.
It was necessary to show causal connection between the
loss and the alleged negligence or disregard of regula-
tions.

We accept the ruling by the Circuit Court of Appeals
as to the disputed items of costs taxed against petition-
ers by the trial court, except as to charges by witnesses
for travel outside the district. That item should be
eliminated.

*Reversed.*